Sandra **RODRIGUEZ** and Herman **Mendoza Aguilar, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–99–00479–CR, 14–99–00517–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

April 19, 2001.

Frank Stambaugh, Houston, for appellant.

Calvin Hartman, Houston, for appellee.

Panel consists of Justices YATES, FOWLER, and BAIRD.*

## MAJORITY OPINION

YATES, Justice.

Appellants were charged by information with the offense of failing to report child abuse. *See* TEX. FAM.CODE ANN. § 261.101(a) (Vernon Supp.1999). Failure to report such abuse is a Class B misdemeanor. *See* TEX. FAM.CODE ANN. § 261.109 (Vernon 1996).

Prior to trial, appellants filed a motion to quash their informations, contending the statute was facially unconstitutional because the term "immediately" was unconstitutionally vague. Appellant, Sandra Rodriguez, also filed a plea for immunity contending she was entitled to immunity under Texas Family Code section 261.106. The trial court denied the motions and, pursuant to a plea bargain agreement with the State, appellants pled *nolo contendere* and were sentenced to two days in jail and fined $750 each. Appellants gave timely notice of appeal. Appellants now challenge the trial court's denial of the motion to quash the information and plea for immunity. We affirm.

On November 6, 1997, Officer Davis of the Houston Police Department knocked on the door of the apartment where Herman Aguilar, Sandra Rodriguez, Margarita Aguilar, and the complainant lived. Officer Davis was at the apartment to inquire about a report he had received from Hector Agomay that the complainant, a five year old boy, was being physically abused by his mother, Margarita Aguilar. Sandra Rodriguez responded to Davis's knock on the door. Davis attempted to question Rodriguez, but discovered she did not speak English. Because Davis did not speak Spanish, he asked a passing neighbor, Paulette Sousa, to act as an interpret-

er. He asked Rodriguez if a five year old boy lived in the house. Rodriguez told Davis that no five year old boy lived in the house. Officer Davis then left the apartment.

After Officer Davis left, Rodriguez told Sousa that the boy was in the apartment. Rodriguez took Sousa to the back room of the apartment where Sousa saw the complainant, who was naked and covered with bruises. The complainant was in a closet at the time Sousa discovered him. At that time, Sousa called Officer Davis back to the apartment. Officer Davis attempted to determine where the complainant's mother, Margarita, was. Rodriguez told him she was at "the clinic," but could not tell the officer where the clinic was located. Officer Davis then took the complainant to Texas Childrens Hospital.

Rodriguez later told Sousa that she had witnessed Margarita beating the complainant while he was naked. This beating had taken place weeks or months before November 6, 1997. Rodriguez also told Sousa that Margarita had removed the complainant from school because she was afraid the teachers would discover the abuse.

Rodriguez denied that she had seen Margarita beat the complainant She stated she had cut the complainant's hair after seeing Margarita pull his hair so hard she pulled some of it out. Rodriguez also testified that Margarita took the complainant out of school because she did not want to get in trouble. In a written statement, Rodriguez stated, "I didn't report to the police because I didn't even—I didn't even know the telephone number from the office."

Officer Gonzalez of the Houston Police Department conducted a follow-up investi-

* Former Judge Charles F. Baird sitting by assignment.

gation of the abuse. Gonzalez testified that both Herman Aguilar and Rodriguez told him they did not report the abuse to anyone. Rodriguez told him that she had heard Margarita hitting the complainant and had heard the child screaming behind the bedroom door. Gonzalez found and arrested Margarita two weeks after the complainant had been taken to the hospital. It was not until after her arrest that Herman Aguilar gave a statement to the police concerning the allegations.

Herman Aguilar testified that he and Rodriguez came to the United States and began living with Margarita and the complainant in September, 1997. He testified that Rodriguez told him that the complainant had been removed from school so the abuse would not be discovered.

Appellant, Sandra Rodriguez, filed two pretrial motions alleging the statute was unconstitutionally vague and requesting immunity under the statute because she had assisted in the investigation. Herman Aguilar filed a motion alleging the statute was unconstitutional. The trial court denied the motions, stating, "[T]his abuse had been going on for apparently quite sometime in very close quarters and I find it difficult to find good faith when I see this set of circumstances. So, with respects, I'm going to have to deny both your motions."

█ In their first point of error, appellants claim the trial court erred in denying their motion to quash because the statute under which they were prosecuted is unconstitutionally vague. Texas Family Code section 261.109(a) provides: "A person commits an offense if the person has cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect and knowingly fails to report as provided in this chapter." In the instant case, appellants were required to report in the manner provided for under section 261.101(a), which states: "A person having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person shall immediately make a report as provided by this subchapter."

In their motion to quash, appellants claim section 261.101(a) is unconstitutional because the term immediately has not been "determined, measured, defined or reduced to a reasonable certainty capable of common and ordinary understanding rendering it vague and uncertain as to the time in which the report required thereby must be made."

█ Before we can address the merits of appellants' claim that section 261.101(a) is unconstitutional, appellants must first show the statute is unconstitutional as applied to them. *See Vuong v. State,* 830 S.W.2d 929, 941 (Tex.Crim.App. 1992). When a vagueness challenge involves First Amendment concerns, the statute may be held facially invalid even though it may not be unconstitutional as applied to the appellant's conduct. *Long v. State,* 931 S.W.2d 285, 288 (Tex.Crim. App.1996). Where no First Amendment rights are involved, however, the court need only examine the statute to determine whether it is impermissibly vague as applied to the appellant's specific conduct. *Bynum v. State,* 767 S.W.2d 769, 774 (Tex. Crim.App.1989). Accordingly, it is the appellants' burden to establish that the statute is unconstitutional as applied to them; that it might be unconstitutional to others is not sufficient. *Id.*

Section 261.101(a) provides that if a person has cause to believe that a child is being abused or neglected that person "shall immediately make a report." Appellants' facial challenge fails because the statute is sufficiently clear as applied to

them. The record reflects that appellants had lived with the complainant and his mother for approximately two months, during which they witnessed the mother's abuse of the child. Rodriguez acknowledged that she had heard the child being beaten by his mother and had cut his hair so that his mother could not pull it out. When a police officer inquired about the complainant, Rodriguez stated that no five year old boy lived in the apartment. It was not until the police officer left the apartment that Rodriguez told Sousa that the child was in the apartment. Therefore, because appellants never reported the abuse, their conduct is clearly covered by the statute.[1] *See Sanchez v. State*, 995 S.W.2d 677, 683 (Tex.Crim.App.1999) (holding that a person who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others). Appellants' first point of error is overruled.

■ In her second point of error, Rodriguez contends she should be immune from prosecution under Texas Family Code section 261.106(a) because she assisted in the investigation of a report of alleged child abuse. Family Code section 261.106 provides that a person acting in good faith who reports or assists in the investigation of a report of alleged child abuse or ne-glect or who testifies or otherwise participates in a judicial proceeding arising from a report, petition, or investigation of alleged child abuse or neglect, is immune from civil or criminal liability that might otherwise be incurred or imposed. A person who reports the person's own abuse or neglect of a child or who acts in bad faith or with malicious purpose in reporting alleged child abuse or neglect is not immune from civil or criminal liability.

Although Rodriguez failed to report the abuse, she claims she should be immune from prosecution because she, in good faith, assisted in the investigation of the abuse. To be entitled to immunity, one must have assisted in the investigation of the report in good faith. *See Gonzalez v. Avalos*, 866 S.W.2d 346, 351 (Tex.App.—El Paso 1993), *writ dism'd w.o.j.* 907 S.W.2d 443 (Tex.1995). The record in this case reflects that Rodriguez did not, in good faith, assist in the investigation. To the contrary, when Officer Davis first arrived, she told him no five year old child lived in the apartment. She did not give a statement to the police until the child had been removed from the home. The trial court correctly denied immunity under section 261.106. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.

---

1. The dissent takes the position that because the record does not show that appellants knew Margarita Aguilar burned the complainant with an iron, they were under no duty to report such abuse, "much less in an immediate fashion." *Rodriguez v. State*, 47 S.W.3d 86, 87 (Tex.App.—Houston [14th Dist.] 2001, n.p.h.). The statute appellants challenge as unconstitutional states that a person commits an offense if he or she has cause to believe a child has been or may be adversely affected by abuse or neglect and knowingly fails to report that abuse. The record shows that appellants witnessed Margarita Aguilar's abuse of the complainant for several weeks or months without reporting it. Appellants' conduct is clearly proscribed by the statute. The fact that the record does not show that appellants witnessed a particular instance of abuse alleged in the information does not affect their standing to challenge the constitutionality of the statute. As we noted above, it is the appellant's burden to establish the statute is unconstitutional as applied to them. *See Bynum v. State*, 767 S.W.2d at 774. Whether appellants failed to report the alleged abuse because they were unaware of a specific act of abuse is not a question that is properly before this court. In fact, by their plea of no contest appellants did not contest the allegations in the information.

BAIRD, Justice, dissenting.

Believing § 261.101(a) of the Texas Family Code which criminalizes the failure to report child abuse or neglect is facially unconstitutional, I respectfully dissent.

## I.

Section 261.109(a) provides: "A person commits an offense if the person has cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect and knowingly fails to report as provided in this chapter." Appellants were required to report in the manner provided for under § 261.101(a), which states: "A person having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person shall *immediately* make a report as provided by this subchapter." (emphasis supplied).[1] The combination of these sections provided the basis for the informations which, in relevant part, alleged appellants:

after having cause to believe that the physical and mental health and welfare of [the complainant], a child younger than eighteen years of age ... had been and may be further adversely affected by abuse, to-wit: physical injury that results in substantial harm to the complainant or the genuine threat of substantial harm from physical injury to the complainant, by Margarita Aguilar burning the complainant on the hand with an iron, did knowingly fail to report said abuse in accordance with the requirements of Chapter 261, Subchapter B, Texas Family Code.

Prior to trial, appellants filed motions to quash the information. Specifically, the motion contended:

Section 261.101(a), Texas Family Code is manifestly unconstitutional and void on its face for indefiniteness and uncertainty in that the term "immediately" has not been determined, measured, defined or reduced to a reasonable certainty capable of common and ordinary understanding rendering it

---

1. In toto, § 261.101 provides:

Persons Required to Report; Time to Report
(a) A person having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person shall immediately make a report as provided by this subchapter.
(b) If a professional has cause to believe that a child has been abused or neglected or may be abused or neglected or that a child is a victim of an offense under Section 21.11, Penal Code, the professional shall make a report not later than the 48th hour after the hour the professional first suspects that the child has been or may be abused or neglected or is a victim of an offense under Section 21.11, Penal Code. A professional may not delegate to or rely on another person to make the report. In this subsection, "professional" means an individual who is licensed or certified by the state or who is an employee of a facility licensed, certified, or operated by the state and who, in the normal course of official duties or duties for which a license or certifi-

cation is required, has direct contact with children. The term includes teachers, nurses, doctors, day-care employees, employees of a clinic or health care facility that provides reproductive services, juvenile probation officers, and juvenile detention or correctional officers.
(c) The requirement to report under this section applies without exception to an individual whose personal communications may otherwise be privileged, including an attorney, a member of the clergy, a medical practitioner, a social worker, a mental health professional, and an employee of a clinic or health care facility that provides reproductive services.
(d) Unless waived in writing by the person making the report, the identity of an individual making a report under this chapter is confidential and may be disclosed only:
(1) as provided by Section 261.201; or
(2) to a law enforcement officer for the purposes of conducting a criminal investigation of the report.

vague and uncertain as to the time in which the report required thereby must be made.

Consistent with that argument, appellants now contend § 261.101(a), when construed with § 261.109 as a penal statute is constitutionally invalid.

## II.

With any challenge to the constitutionality of a statute, the appellate court begins with the presumption that the statute is valid and the legislature has not acted unreasonably or arbitrarily in enacting the statute. *See Cotton v. State*, 686 S.W.2d 140, 144 (Tex.Crim.App.1985); *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex.Crim. App.1978); *Ex parte Anderson*, 902 S.W.2d 695, 698 (Tex.App.—Austin 1995, pet. ref'd). The burden rests on the party challenging the statute to establish its unconstitutionality. *See Cotton*, 686 S.W.2d at 145; *Granviel*, 561 S.W.2d at 511; *Morris v. State*, 833 S.W.2d 624, 627 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd).

The Court of Criminal Appeals most recently specified the burden an appellant bears in a facial challenge of vagueness in *Sanchez v.. State*, 995 S.W.2d 677 (Tex. Crim.App.), *cert. denied*, 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411 (1999). Under *Sanchez*, a facial challenge may be successful only if the statute is vague in all of its applications. To be vague in all of its applications, a statute must necessarily be vague as to the litigant; hence, if the statute is not vague as to the litigant, a Due Process challenge must necessarily fail: a person who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. *Id.*, 995 S.W.2d at 683. Under this standard, the *Sanchez* Court concluded the defendant bore the burden of proving the law was vague as applied to him or vague in all of its possible applications. *Id.* 995 S.W.2d 677, 689.

The majority holds appellants have failed to prove the statute was unconstitutionally applied to them. To support this holding, the majority cites the facts developed at the pretrial hearing on appellants' motions to quash but fails to consider the arguments supporting those motions namely that the term "immediately" is unconstitutionally vague in all of its applications. In each respect, the majority errs. First, the informations alleged appellants failed to report abuse of "Margarita Aguilar burning the complainant on the hand with an iron." However, there is nothing in the record to reflect appellants were aware of such abuse. The other forms of abuse of which appellants were aware, were not alleged in the informations. Without some factual basis from which to conclude appellants were aware of the alleged abuse, there is no duty to report same, much less in an immediate fashion. Therefore, the majority errs in holding the statute was constitutionally applied when the facts giving rise to that application are not those alleged in the charging instrument. Second, the majority misses the crux of appellants' argument namely that the term "immediately" is unconstitutionally vague as a matter of law. Because "immediately" is an essential component of every prosecution under section 261.101(a) that statute is necessarily unconstitutional in all its applications, and *a fortiori* unconstitutionally applied to appellants. I will now address that argument.

## III.

Living under a rule of law entails various suppositions, one of which is that all persons are entitled to be informed as to what the State commands or forbids. *See Papachristou v. City of Jacksonville*, 405

U.S. 156, 163, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). A statute that forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. *See Adley v. State,* 718 S.W.2d 682, 685 (Tex.Crim. App.1985) (citing *Connally v. General Const. Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *Passmore v. State,* 544 S.W.2d 399 (Tex.Crim.App.1976); *Baker v.. State,* 478 S.W.2d 445 (Tex.Crim.App. 1972); *Ex Parte Chernosky,* 153 Tex.Cr.R. 52, 217 S.W.2d 673 (1949)). Under this rule of law, a statute is void for vagueness on either of two grounds: first, if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," *Papachristou,* 405 U.S. at 163, 92 S.Ct. at 843; *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); or, second, if it "encourages arbitrary and erratic arrests and convictions." *Papachristou,* 405 U.S. at 163, 92 S.Ct. at 843; *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Herndon v. Lowry,* 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937). Either is an independent ground upon which the statute may be challenged. *See Adley,* 718 S.W.2d at 685. In the instant case, appellants contend the statute violates due process because the use of the word "immediately" is so vague as to render the statute facially unconstitutional.

### A. United States Supreme Court Precedent

One of the earliest cases on this subject is *Connally v. General Const. Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926), where the Court stated:

That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will

render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

*Id.* 269 U.S. at 391, 46 S.Ct. at 127.

The *Connally* Court struck down Oklahoma statutes that required employers to pay their employees "not less than the current rate of per diem wages in the locality where the work is performed." *Id.,* 269 U.S. at 393, 46 S.Ct. at 128. The *Connally* Court found the words "wages" and "locality" so uncertain as to deny due process to the employers.

Thirteen years later, the Supreme Court decided the case of *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939), which dealt with a state statute that made it unlawful to be a "gangster." The Court noted that the meaning of "gang" and its dependent, "gangster," were numerous and varied. The Court further noted the meaning was not derivable from the statute or the common law. *Id.,* 306 U.S. at 455, 59 S.Ct. at 619–20. Consequently, the Court concluded the terms employed by the statute were so "vague, indefinite and uncertain that it must be condemned as repugnant to the due process clause of the Fourteenth Amendment." *Id.,* 306 U.S. at 458, 59 S.Ct. at 621.

Finally, we note the case of *Papachristou v. City of Jacksonville,* where the Supreme Court considered an ordinance proscribing "vagrancy." The Court declared the ordinance void for vagueness primarily because it employed terms originally found in ancient Vagrancy Acts. The Court held

the archaic classifications found there were no longer appropriate in contemporary society. *Id.*, 405 U.S. at 162–63, 92 S.Ct. at 842–43.

## B. Court of Criminal Appeals Precedent

Of course, these holdings are not limited to the United States Supreme Court. Our Court of Criminal Appeals has long recognized that a statute must be sufficiently definite that its terms and provisions may be known, understood and applied; otherwise, it is void and unenforceable. *See Floyd v. State,* 575 S.W.2d 21, 23 (Tex. Crim.App.1978). *See also, Ex parte Slaughter,* 92 Tex.Cr.R. 212, 243 S.W. 478 (1922). More than a half century ago, in *Ex parte Chernosky,* 153 Tex.Crim. 52, 54, 217 S.W.2d 673, 674 (1949), the court held a statute that defined reckless driving as driving a vehicle "without due caution or circumspection" was too vague and indefinite to be enforceable. *See also Baker v. State,* 478 S.W.2d 445, 449 (Tex.Crim.App. 1972) (Vagrancy statute unconstitutional.); *Cotton,* 686 S.W.2d at 144 (Statutory phrase "evidence of intoxication" unconstitutionally vague.); *Howard v. State,* 617 S.W.2d 191 (Tex.Crim.App.1979) (Ordinance under which defendant was arrested unconstitutionally vague.).

In *Adley v. State,* 718 S.W.2d 682 (Tex. Crim.App.1985), the court considered the terms "make" and "receive" as used in the gambling promotion statute. The statute sought to limit felony penalties to only those individuals who engaged in gambling commercially, i.e., the exploitive gambler. The court held the terms "makes a bet," which was a misdemeanor offense, and "receives a bet," which constituted a felony offense were synonymous. Therefore, the legislature, without limiting or explaining the distinction between the terms, "painted with too broad a brush" and enacted a statute that was unconstitutionally vague and ambiguous. *Id.* at 685.

## IV.

Under *Sanchez,* appellants bear the burden of proving the combination of section 261.109(a) and section 261.101(a), which requires a defendant to *"immediately* make a report," was vague in all of its possible applications. *Id.* 995 S.W.2d 677–689.[2] To discharge this burden appellants rely upon *Garrett v. State,* 391 S.W.2d 65 (Tex.Crim. App.1965), which was the authority appellants relied upon in the trial court. In *Garrett,* the defendant was convicted of failure to return his driver's license and registration as required by Vernon's Civil

---

2. There are serious conflicts in the opinions of the Court of Criminal Appeals and the United States Supreme Court as to whether a defendant is required to show a penal sanction is unconstitutionally applied as to him or in all of its possible applications before a successful facial challenge can be made. For example, *Adley, supra,* and *Cotton, supra,* both held statutes facially unconstitutional without first determining if they were unconstitutionally applied or unconstitutional in all of their applications. Similarly, the Supreme Court has struck down sanctions as unconstitutionally vague without first holding they were unconstitutionally applied to the defendants. *See Kolender v.. Lawson,* 461 U.S. 352, 358 n. 8, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903

(1983); *City of Chicago v. Morales,* 527 U.S. 41, 119 S.Ct. 1849, 1858 n. 22, 144 L.Ed.2d 67 (1999); and *Lanzetta,* 306 U.S. at 453 ("If on its face the challenged provision is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it."). However, other authority from the Court of Criminal Appeals, such as *Sanchez, supra,* impose that burden, as do several cases from the Supreme Court. *See e.g., U.S. v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697. It is not necessary to resolve this conflict here because appellants have proven section 261.101(a) is unconstitutional in all of its applications.

Statute article 6701h, §§ 31, 32(d). That statute required, in relevant part: "Any person whose license or registration shall have been suspended . . . shall *immediately* return his license and registration to the Department [of Public Safety]." (emphasis added). On direct appeal, the defendant argued "immediately" was vague and uncertain. The Court of Criminal Appeals agreed and held the statute facially unconstitutional.

In reaching that determination, the *Garrett* Court relied upon *Guerra v. State*, 155 Tex.Cr.R. 306, 234 S.W.2d 866 (Tex.Crim. App.1950).[3] Guerra was charged with violating Texas Penal Code article 226, which required the presiding officer of any election to "immediately" deliver the ballots to the county clerk. Guerra moved to quash the information, "contending that the word 'immediately' is so relative and indeterminate that there is no ascertainable standard of guilt, since one jury might find on a set of facts that the act was done immediately, and another on the same facts, find that it was not." *Id.*, 155 Tex.Crim. at 308, 234 S.W.2d at 868. The trial court denied the motion to quash and Guerra appealed. The *Guerra* Court employed various parts of "Words and Phrases" in an effort to obtain a definition of immediately. The Court set out three separate definitions, which provide as follows:

"There is no precise definition, so far as time is concerned, of the word 'immediately.' In every case the meaning depends upon the circumstances of the case and the act to be performed."

"'Immediately' is a term of relative signification, and never designates an exact portion of time, and is used with more or less latitude by universal consent, according to the subject to which it is applied."

"The word 'immediately,' whether occurring in contracts or statutes, refers to the act that must be performed within such convenient time as is reasonably requisite, and what is a reasonable time must be determined from the facts of the particular case."

*Id.*, 155 Tex.Crim. at 309–10, 234 S.W.2d at 868–69.

Because there was no precise definition, the *Guerra* court held "the offense here charged is no longer so defined that a presiding officer of an election may ascertain in advance with reasonable certainty when the box containing the voted ballots must be delivered to the county clerk in order to avoid prosecution and punishment." *Id.*, 155 Tex.Crim. at 310, 234 S.W.2d at 868–69. Accordingly, the judgment of the trial court was reversed and the prosecution dismissed.

As they relate to the instant case, neither *Garrett* nor *Guerra* stand for the unmistakable proposition that the term "immediately." is vague as a matter of law. Neither case has been overruled by the Court of Criminal Appeals. This court, as an intermediate appellate court, is bound to follow the law as declared by the state's highest courts. *See Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex.1964). The Court of Criminal Appeals is the highest court on matters of criminal law, and when

---

**3.** The *Garrett* Court also relied upon Attorney General Opinion No. C–341 dated November 3, 1964, which stated, in pertinent part: "[U]ntil Article 6701–h, Section 31 V.C.S. is amended or the term 'immediately' has been determined, measured, defined and reduced to a reasonable certainty capable of common and ordinary understanding, Article 6701–h, Section 32(d), V.C.S, construed in connection with Article 6701–h, Section 31, V.C.S. is manifestly unconstitutional and void on its face for indefiniteness and uncertainty of those particular acts or omissions which constitute the offense set forth therein." *Garrett*, 391 S.W.2d at 66.

it has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation. *See Southwick v. State,* 701 S.W.2d 927, 929 (Tex.App.—Houston [1st Dist.] 1985, no pet.) (*Citing State v. Schwarz,* 103 Tex. 119, 124 S.W. 420 (1910); *Robinson v. City of Galveston,* 51 Tex.Civ.App. 292, 111 S.W. 1076 (1908, no writ)). *See also State v. Stevenson,* 993 S.W.2d 857, 867 (Tex. App.—Fort Worth 1999, no pet.); *Horton v.. State,* 986 S.W.2d 297, 300 (Tex.App.— Waco 1999, no pet.); *In re Maxwell,* 970 S.W.2d 70, 74 (Tex.App.—Houston [14th Dist.] 1998, no pet.); *Flores v. State,* 883 S.W.2d 383, 385 (Tex.App.—Amarillo 1994, pet. ref'd). Once the law is declared, we are not at liberty to impose a different declaration of the law. *Abdnor v. Ovard,* 653 S.W.2d 793, 794 (Tex.Crim.App.1983). Because the holdings in *Guerra* and *Garrett* are deliberate and unequivocal, they are binding on this court and must be followed.

Additionally, it is important to note that the term "immediately" is not defined in either the family code or the penal code. And in the intervening years since *Guerra* and *Garrett,* the term "immediately" has only increased in vagueness. Today, when one turns to "Words and Phrases," the term "immediately" has 35 pages of definitions. 20 Words and Phrases, pp. 150–185.

The researcher will also find six additional pages in the pocket part. 20 Words and Phrases, supp. pp. 88–93. In light of the holdings in *Guerra* and *Garrett,* and there being no readily ascertainable definition of "immediately" in either the family or penal codes, we hold the term "immediately" is so vague that it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute and because it encourages arbitrary and erratic arrests and convictions. *Papachristou,* 405 U.S. at 163, 92 S.Ct. at 843.

In light of this authority, it should be self-evident that an offense which employs a term that is vague as a matter of law, is necessarily vague in all of its applications. Therefore, I would hold that because the charged offense required for its commission the failure to report the alleged abuse or neglect "in the manner provided for" in section 261.101(a), which requires the report be made "immediately," the statute is necessarily vague in all of its applications. *See Adley,* 718 S.W.2d at 683 n. 1 (if the statute is unconstitutionally vague, so is the charging instrument which tracks the statutory language).[4]

Accordingly, I would sustain these points of error, reverse the judgments of the trial court and remand these cases to

---

4. Although not presented in the instant case, we note that subsection (b) requires professionals to report suspected child abuse or neglect "not later than the 48th hour after the hour the professional first suspects" the abuse or neglect. Specifically, section 261.101(b) provides:

(b) ·If a professional has cause to believe that a child has been abused or neglected or may be abused or neglected or that a child is a victim of an offense under Section 21.11, Penal Code, the professional shall make a report not later than the 48th hour after the hour the professional first suspects that the child has been or may be abused or neglected or is a victim of an offense under Section 21.11, Pe-

nal Code. A professional may not delegate to or rely on another person to make the report. In this subsection, "professional" means an individual who is licensed or certified by the state or who is an employee of a facility licensed, certified, or operated by the state and who, in the normal course of official duties or duties for which a license or certification is required, has direct contact with children. The term includes teachers, nurses, doctors, day-care employees, employees of a clinic or health care facility that provides reproductive services, juvenile probation officers, and juvenile detention or correctional officers.

that court for dismissal of the informations. Because the majority does not, I respectfully dissent.